## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:23-CR-3063 |
| vs. | |
| CHRISTOPHER LEE KARSTEN, | MEMORANDUM AND ORDER |
| Defendant. | |

The defendant is charged with one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a), for failing to register as required by the Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20901 *et seq.* Filing 1. His federal obligation to register, as charged in the indictment, was allegedly premised on an underlying 2001 Nebraska conviction for first degree sexual assault. Filing 1. The defendant pled guilty to the federal charge in this case pursuant to a plea agreement. Filing 20; filing 21; filing 25.

Now, however, he moves to withdraw his plea, after his counsel discovered while preparing for sentencing that the defendant is factually innocent of the crime charged. Filing 32. Specifically, he alleges that contrary to what the parties had believed, his Nebraska conviction for first degree sexual assault only required him, under federal law, to register for 15 years, not 25—meaning that his obligation to register ended before the current offense was allegedly committed. *See* filing 32. The Court agrees and will grant the defendant's motion to withdraw his plea.

DISCUSSION

WITHDRAWAL OF GUILTY PLEA

A defendant may withdraw a plea after the Court accepts it, but before imposing sentence, if the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B); *see United States v. Osei*, 679 F.3d 742, 746 (8th Cir. 2012). The defendant bears the burden of showing a fair and just reason for withdrawal. *Id.*

And even if the defendant shows a fair and just reason for withdrawal, the Court must consider other factors before granting the motion, such as whether the defendant asserts his innocence of the charge, the length of time between the plea and the motion to withdraw it, and whether the government will be prejudiced if the Court grants the motion. *United States v. McHenry*, 849 F.3d 699, 705 (8th Cir. 2017). But there is no absolute right to withdraw a plea before sentencing. *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997); *see Osei*, 679 F.3d at 746. Rule 11 proceedings are not an exercise in futility, and a plea is a solemn act not to be disregarded because of belated misgivings. *See Osei*, 679 F.3d at 746-47.

The defendant contends that while preparing for sentencing, his counsel discovered that as a matter of law, he's not guilty of the crime charged—which, the defendant says, goes both to the factual basis for the plea and calls into question the effectiveness of counsel. Filing 33 at 2-4. The Court agrees that the lack of a factual basis for the plea (which will be discussed below) is a fair and just reason to permit its withdrawal. *See United States v. Heid*, 651 F.3d 850, 856 (8th Cir. 2011).[1]

---

[1] Ineffective assistance of counsel may also be a fair and just reason for withdrawing a plea. *See United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114, 1130 (N.D. Iowa 2007). But the Court notes, for the record, its view that the defendant's capable counsel was *not* ineffective

Considering the other factors, the defendant also asserts his actual innocence, which weighs strongly in favor of his motion. *See United States v. Barnett,* 426 F. Supp. 2d 898, 913-14 (N.D. Iowa 2006). The Court credits the defendant's claim that the motion was promptly filed because its basis was only discovered while preparing for sentencing—which makes sense, given how the base offense level for this charge is determined. *See* U.S.S.G. § 2A3.5(a). And while the government is undoubtedly prejudiced, the Court finds that being unable to prosecute a factually innocent defendant isn't the sort of prejudice that weighs against granting the motion. *See Barnett,* 426 F. Supp. 2d at 914.

## SORNA

Turning to the merits of the defendant's argument: Under SORNA, the length of a sex offender's registration requirement is determined by the severity of the underlying sex offense, categorized by "tiers." *See* 34 U.S.C. § 20915(a). Tier III is the most severe category and Tier I is the least severe, serving as a catchall when Tiers II or III do not apply. *United States v. Coulson,* 86 F.4th 1189, 1191 (8th Cir. 2023)

As relevant here a "Tier I" sex offender is required to register for 15 years, while a "Tier II" sex offender must register for 25 years. § 20915(a). That period runs from the date the offender is released from any imprisonment, *see id.*, which the Court understands for the defendant was May 10, 2005. So, if the defendant's underlying conviction was for a Tier I offense, his registration obligation ended in 2020. But if it was a Tier II offense, his registration obligation runs until 2030. And he's charged with knowingly failing to register between October 10 and November 1, 2022. Filing 1.

---

for failing to recognize this complicated issue before the defendant's plea was entered—and should, in fact, be credited for spotting it and raising it now.

Tier II applies when the SORNA defendant's underlying state offense is "comparable to or more severe than" one of the listed federal Tier II offenses. *See* 34 U.S.C. § 20911; *see also Coulson*, 86 F.4th at 1191. The relevant federal offense here is at the end of a winding stream of citations. One of the listed Tier II offenses is "abusive sexual contact," which is defined "as described in Section 2244 of Title 18." § 20911(3)(A)(iv). That section, in turn, contains a cross-reference to "subsection (a) of section 2243 of this title." 18 U.S.C. § 2244(a)(3). And that section, finally, proscribes knowingly engaging in a sexual act, or attempting to do so, with a person who is between the ages of 12 and 16 and is at least four years younger than the person so engaging. 18 U.S.C. § 2243(a). That federal offense is, according to the government, comparable to the defendant's Nebraska state conviction for attempted first degree sexual assault in violation of Neb. Rev. Stat. § 28-319(1). Filing 45 at 3-4.

## THE CATEGORICAL APPROACH

SORNA's tier analysis requires the Court to engage in the so-called "categorical approach" to comparing state and federal offenses. *Coulson*, 86 F.4th at 1193. Under that approach, the Court compares the elements of the prior state offense with the federal definition of a Tier II offense, to determine whether the state offense sweeps more broadly. *See United States v. Brown*, 73 F.4th 1011, 1014 (8th Cir. 2023). But if the state statute covers more conduct than the federal definition of a Tier II offense, and lists alternative methods of committing the crime, then the Court must determine whether the listed alternatives are elements or means. *See Brown*, 73 F.4th at 1014.

If the statutory alternatives are multiple means of committing a single offense, the statute is indivisible, and the pure categorical approach applies. *Id*. If, however, the statute sets forth alternative elements that define multiple offenses, the statute is divisible, and the Court must apply the "modified

- 4 -

categorical approach" to determine which alternative was the offense of conviction. *Id*.

In this case, the version of the statute in effect at the time,[2] § 28-319(1) (Reissue 1995), provided:

> Any person who subjects another person to sexual penetration (a) without consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree.

The question, in other words, is whether the Court should regard the defendant as having been convicted of "sexual assault in the first degree" in violation of the entirety of § 28-319(1), or whether the Court should regard the defendant as having been convicted of "first degree sexual assault of a child," solely in violation of § 28-319(1)(c).

As the Court understands the parties' arguments, that question is dispositive. The defendant argues that all of those alternatives—(a), (b), and (c)—are different ways of committing the crime of first degree sexual assault. Filing 33 at 5-7 (citing *United States v. Church*, 461 F. Supp. 3d 875, 882 (S.D. Iowa, 2020)). And, as a result, the defendant concludes that the statute sweeps more broadly than Tier II. Filing 33 at 6. The government, on the other hand,

---

[2] The statute has been amended since the defendant's 2001 conviction: New crimes for sexually assaulting a child under the age of 12 were created, so § 28-319(1)(c) was amended to specify a victim between the ages of 12 and 16. *See* L.B. 1199, 99th Leg., 2d Sess. (Neb. 2006). The amendment doesn't affect the Court's interpretation of the statute.

wants the Court to focus on subsection (c), arguing that it's functionally a separate crime—and, as a result, squarely comparable to a Tier II offense. Filing 45 at 7-9. But the defendant doesn't argue that § 28-319(1)(c), if allowed to stand alone, isn't a Tier II offense. *See* filing 33. And the government doesn't dispute that § 28-319(1), if considered in its entirety, is overinclusive. *See* filing 45. In other words, the question of divisibility determines the outcome here.

DIVISIBILITY

The Supreme Court explained in *Mathis v. United States*, 579 U.S. 500, 517 (2016), that:

> The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution.

(Citation omitted). In that instance, "the court may ask only whether the *elements* of the state crime and generic offense make the requisite match." *Id*.

To make this means-or-elements determination, the Court must look to the statute's text and structure, authoritative state court decisions, and the record of the defendant's prior conviction, to determine which words or phrases in the statute are elements of the crime, as opposed to the means, or specific

facts, of satisfying these elements. *United States v. McConnell*, 65 F.4th 398, 403 (8th Cir. 2023); *see Mathis*, 579 U.S. at 517-19.

Other courts have reached sharply varying conclusions about whether similar statutes from other jurisdictions are indivisible or divisible—some support the government's position that different ways of committing sexual abuse are, in fact, functionally difference crimes, subject to the modified categorical approach. *See Debique v. Garland*, 58 F.4th 676, 682 n.5 (2d Cir. 2023); *Johnson v. United States*, 24 F.4th 1110, 1117-19 (7th Cir. 2022); *Valdez v. Garland*, 28 F.4th 72, 78 (9th Cir. 2022); *United States v. Alfaro*, 835 F.3d 470, 473 (4th Cir. 2016); *United States v. Davis*, 875 F.3d 592, 598 (11th Cir. 2017); *United States v. Armes*, 953 F.3d 875, 879 (6th Cir. 2020). Others, however, support the defendant's position that the statute is indivisible because the relevant element of the offense is a lack of valid consent, and the statute simply provides different means of satisfying that element. *United States v. Al-Muwwakkil*, 983 F.3d 748, 757 (4th Cir. 2020); *United States v. Degeare*, 884 F.3d 1241, 1249 (10th Cir. 2018).[3]

It is, however, Nebraska caselaw that dictates the specific outcome here. One of the few things that is reasonably clear about determining divisibility under *Mathis* is that when a state court decision indicates that the statutory alternatives are merely different ways of committing a single crime, and that the jury need not agree on any particular one of those alternatives to convict, then the statutory alternatives are means, rather than elements. *Degeare*, 884 F.3d at 1249; *see Mathis*, 579 U.S. at 506, 517; *see also United States v. McMillan*, 863 F.3d 1053, 1057 (8th Cir. 2017); *cf. Rincon v. Garland*, 70 F.4th

---

[3] The reasoning in these cases is often hard to reconcile, and provides some basis to sympathize with repeated criticism of the entire legal framework for deciding these issues. *See, e.g.*, *Valdez*, 28 F.4th at 85-86 (Graber, J., concurring in part).

1080, 1084-85 (8th Cir. 2023) (holding that a drug possession statute's alternatives were elements because separate convictions were permitted for simultaneous possession of each alternative).

And with respect to § 28-319(1), the Nebraska Supreme Court has said, repeatedly, that:

> There are three distinct ways in which a perpetrator can commit the offense of first degree sexual assault under § 28–319(1). In addition to compelled or coerced sexual penetration pursuant to § 28–319(1)(a), a perpetrator 19 years or older may commit first degree sexual assault by subjecting a victim that is less than 16 years of age to sexual penetration. See § 28–319(1)(c). Furthermore, Nebraska's first degree sexual assault law prohibits, without qualification, a perpetrator from sexually penetrating a victim that the attacker knows or should have known is "mentally or physically incapable of resisting or appraising the nature of his or her conduct." § 28–319(1)(b).

State v. Rossbach, 650 N.W.2d 242, 249 (Neb. 2002); *see* State v. McCurdy, 918 N.W.2d 292, 298–99 (Neb. 2018) ("[t]he first degree sexual assault statute . . . sets forth three ways in which one could be found guilty of the offense"). And moreover, the Nebraska Supreme Court has plainly stated that subsections (a) and (b) of § 28-319(1) are "distinct ways of committing the same offense" and that "where there is evidence of both, a juror may determine guilt based on either." State v. Npimnee, 2 N.W.3d 620, 627 (Neb. 2024). Accordingly, the Court concluded in *Npimnee* that the jury had been instructed correctly when the jurors were told that they need not agree unanimously on whether the offense was committed "without consent" or the victim was "mentally or

physically incapable," so long as they agreed unanimously that the prosecution had proved one element or the other. *Id.* at 626-27; *see also McMillan*, 863 F.3d at 1057. And "*Mathis* makes jury unanimity the touchstone of the means-or-elements inquiry." *Degeare*, 884 F.3d at 1251.

In other words, the Nebraska Supreme Court's interpretation of § 28-319(1) supports the defendant's construction: That the crime of first degree sexual assault has two elements, (1) sexual penetration and (2) lack of valid consent, and subsections (a), (b), and (c) are alternative means of establishing lack of valid consent. Subsection (a) states the lack of consent expressly, while subsections (b) and (c) define particular circumstances in which the victim is legally incapable of consenting. *See In re Int. of K.M.*, 910 N.W.2d 82, 88 (Neb. 2018) (explaining that "the law of sexual assault has traditionally recognized certain circumstances under which an individual lacks the capacity to consent to sexual conduct and where sexual contact with that person thus constitutes sexual assault"); *see also Al-Muwwakkil*, 983 F.3d at 757.

It's based on that reasoning that the U.S. District Court for the Northern District of Iowa likewise concluded, in *Church*, that § 28-319(1) was indivisible. 461 F. Supp. 3d at 886. But the government takes a different tack in trying to get around all that authority. The government notes that *Church* was focused, like other cases, on subdivisions (a) and (b)—so, the government contends it's just subsection (c) that's divisible. Filing 45 at 7.

That stretches statutory interpretation past the breaking point. The inquiry under *Mathis* is whether the alternatives listed in a statute are elements or means—*Mathis* talks about the structure of the entire statute, not individual pieces of it. It's absolutely clear under *Mathis*, given Nebraska caselaw, that subsections (a) and (b) are means. The government cites no

authority, nor is the Court aware of any, for the proposition that *some* of a statute's listed alternatives can be means while other alternatives *in the same list* can somehow be elements. Nor is this Court inclined to make applying the "categorial approach" even more convoluted than it already is.

Nothing in § 28-319(1)'s "text and structure," *see McConnell*, 65 F.4th at 403, provides any support for a conclusion that the statute begins by listing alternative means for committing an offense and then pivots, mid-sentence, into listing one element of a different offense—and *then* pivots back to conclude that any one of the alternatives makes the actor "guilty of sexual assault in the first degree." And the Court has little doubt that, were an offender to be convicted of two counts of first degree sexual assault based on a single incident of sexual penetration of an unconscious 15-year-old, the Nebraska Supreme Court would conclude that the duplicitous convictions were barred by the Double Jeopardy Clause. *Compare Rincon*, 70 F.4th at 1084-85.

The Court notes, for the sake of completeness, that the records of the defendant's prior conviction—so-called *Shepard* documents, *see Mathis*, 579 U.S. at 519 (citing *Shepard v. United States*, 544 U.S. 13, 21 (2005))—provide some support, albeit weak, for the divisibility of the statute. *See* filing 43. They do admittedly charge the defendant solely under § 319(1)(c), *see* filing 43-1 at 5, which is at least consistent with a theory of divisibility, *see id.* at 518-19.

But as the Supreme Court recognized, "such record materials will not in every case speak plainly." *Mathis*, 579 U.S. at 519. They do not speak plainly here. While the underlying factual details of the case are unavailable, it's not hard to imagine circumstances (such as sexual contact with a willing but underage victim) that would readily explain why a charging instrument might specify only subsection (c). In any event, the *Shepard* documents are only

persuasive if "state law fails to provide clear answers," *id*. at 518—and Nebraska law provides a clear answer here.

That answer is neither intuitive nor satisfying: Everyone knows that the defendant violated § 28-319(1)(c), and that's a Tier II offense—yet the Court is precluded from saying so. But as the Third Circuit has lamented,

> The categorical approach mandates our accedence to [the defendant's] demand that we ignore what [he] actually did and focus instead on what someone else, in a hypothetical world, could have done. That's the analytical box the categorical approach puts us in. Thus, even though it is indisputable on this record—and, in fact, no one does dispute—that [the defendant] repeatedly had sex with a minor, when we assess [his] conviction alongside the pertinent federal statutes, the categorical approach blinds us to the facts and compels us to hold that the crime of which [he] was convicted does not amount to the aggravated felony of "sexual abuse of a minor." It is a surpassingly strange result but required by controlling law.

*Cabeda v. Att'y Gen. of United States*, 971 F.3d 165, 167 (3d Cir. 2020). Adherence to controlling authority requires the same result here.

## CONCLUSION

The Court is aware of the implications its reasoning has for the ultimate disposition of this case. But we're not there yet. Whether this case should be dismissed in its entirety is a question the Court will answer when it's asked.

But the Court notes that the defendant has been in custody since his June 8, 2023 arrest. The Court doesn't intend to discourage the government

from preserving its arguments and pursuing any appellate review it might be entitled to, should it choose. If the defendant is eventually to be released, however, the parties are encouraged not to unnecessarily prolong his captivity.

That said, the Court also notes that according to the presentence report, the defendant was apparently living rough when arrested.[4] The parties, the probation office, and the Magistrate Judge are encouraged to carefully consider—particularly given the defendant's history of homelessness, substance abuse, and anger mismanagement—whether there are arrangements that can be made while this case is still pending (consistent with the laws concerning pretrial release, which still govern) that might improve the defendant's chance for successful reentry into the community.

IT IS ORDERED:

1.   The defendant's motion to withdraw his plea (filing 32) is granted.

2.   The defendant's plea of guilty is withdrawn.

3.   This case is returned to the Court's trial calendar.

4.   Counsel are directed to promptly contact the Magistrate Judge's chambers to discuss case progression—including a

---

[4] Which poses a question of how the defendant was expected to maintain his registration as a sex offender when his actual residence was "a tent in an area near 48th Street," but that's beside the point.

new pretrial motions deadline—and the defendant's continued custody.

Dated this 19th day of April, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge